Leonard LIVEOAK, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–85–00063–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 29, 1986.
Rehearing Denied Sept. 29, 1986.

Jack Paul Leon, Samuel Bayless, San Antonio, for appellant.

Thomas F. Lee, Dist. Atty., Del Rio, for appellee.

Before ESQUIVEL, CANTU and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal from a judgment of conviction in a voluntary manslaughter case prosecuted pursuant to TEX. PENAL CODE ANN. § 19.04 (Vernon 1974).

On September 23, 1981, Leonard Liveoak (appellant) shot and killed Ben B. Ingham, III, during a scuffle in appellant's auto. Appellant claimed he shot Ingham in self-defense because Ingham was choking him as appellant was trying to drive from Ingham's residence. The deceased suffered two bullet wounds: one, fired from a distance of approximately four feet, entered the left back chest and exited through the right chest; and the second, fired from a distance of approximately two feet, entered below the ribs, exited through the scrotum and re-entered the thigh. Appellant then pushed the deceased out of the car and drove away from the scene. He called the sheriff's office and reported that he killed Ingham. Deputy Sheriff Bobby Harris arrested appellant in a cafe in Sheffield, Texas. The deputy also removed a gun from appellant's auto, but he had no warrant.

The grand jury indicted appellant for voluntary manslaughter.[1] A jury found him guilty and assessed his punishment at ten years confinement and a fine of $10,000.00. The jury further recommended that the confinement be suspended and appellant be placed on probation for ten years. The jury found appellant used a deadly weapon during the commission of the offense so, as a condition of probation, the trial court ordered that appellant be confined for not less than sixty days, nor more than one hundred twenty days (shock probation). Appellant brings this appeal and raises nineteen grounds of error. We overrule his contentions and affirm the judgment of conviction.

In his first two grounds of error appellant complains of the trial court's actions in *sua sponte* excusing two prospective jurors on the ground that neither could read or write the English language. Appellant argues that neither prospective juror is absolutely disqualified under TEX.CODE CRIM.PROC.ANN. art. 35.12 (Vernon Supp.1986).

■ The prospective jurors in question were members of the weekly panel that had been called for jury duty in Val Verde County. The trial court *sua sponte* excused both jurors from further jury service upon ascertaining that these prospective jurors could not read and write.[2] This is in accord with the provisions of Act of May 17, 1983, ch. 134, § 1, 1983 Tex.Gen.Laws, Local & Spec. 617, 617–20, *repealed by* Act of June 13, 1985, ch. 480, § 26(1), 1985 Tex.Gen. Laws 3363, 4087 (formerly codified at TEX.REV.CIV.STAT.ANN. art. 2133) and its successor TEX.GOV'T CODE ANN. § 62.102 (Vernon Supp.1986). No error is shown.

Appellant next alleges that "the court erred in refusing to require the court reporter to take notes of the court's oral qualifications of the venire," which he claims is mandatory pursuant to TEX. CODE CRIM.PROC.ANN. art. 40.09, § 4 (Vernon Supp.1986). Appellant orally requested that the court reporter record the qualifications of the entire venire. The trial court denied the request but permitted the court reporter to stand by to make a record of the excuse of any juror appellant desired to question.

■ Article 40.09, section 4, mandates that "[a]t the request of either party the court reporter shall take shorthand notes of *all trial proceedings*, including voir dire examination, objections to the court's charge, and final argument." (Emphasis ours.) We cannot conclude therefrom that a trial court is required to have a reporter record the determinations of excuses of the entire venire. We fail to see how the determination of excuses for the venire, as in this case the jury panel for the week, can be considered a portion of the trial proceedings. In any event, the record before us

---

1. This is the second trial of this cause. The Court of Appeals for the Eighth Supreme Judicial District reversed the first judgment and remanded the cause for a new trial. The trial court granted a change of venue to Val Verde County.

2. Before excusing the prospective jurors in question the court permitted counsel for appellant to examine them.

contains the transcription of the court reporter's notes of the two prospective jurors in question. Appellant has not shown a refusal by the trial court to permit the recording of the examination for excuses of any other prospective jurors in the panel for the week. There is also no specific objection of record by appellant concerning the examination for excuses of any other prospective juror. Appellant waived any error. Accordingly, we find appellant's third ground of error to be without merit.

Appellant complains the court erroneously refused to grant his motion to quash the jury panel based on prosecutorial misconduct.

■ During voir dire, the prospective juror, Mrs. Valdes, expressed a bias about the use of firearms and the trial court excused her for cause. Before the court excused her, and while questioning her about this particular bias, the prosecutor asked the following:

Mrs. Valdes, would it surprise you to know that the State legislature of the State of Texas has a similar bias?

The trial court sustained appellant's objection to the question and ordered the jury to disregard and not consider the question. The trial court overruled appellant's oral motion to quash the jury panel based on the improper question. Appellant contends the action of the trial court is inflammatory and designed to prejudice the jury panel regarding his claim of self-defense. After examining the record we cannot conclude that the prosecutor's remarks in any way contributed to the juror's bias or to that of any other prospective juror on the panel. We overrule appellant's fourth ground of error.

■ Appellant next contends it is error for the trial court to permit a special prosecutor for the district attorney to enter the case after voir dire examination had been completed and the jury impaneled and sworn. Appellant argues the absence of the special prosecutor during voir dire examination deprived him of his right to examine prospective jurors as to whether they had knowledge of the special prosecu-

tor. He claims the possible knowledge of or acquaintance with the special prosecutor is relevant both as a ground for a peremptory challenge and a challenge for cause. Appellant cites no authority mandating the presence of all participating attorneys during voir dire. We hold that it is discretionary with the trial court as to what attorneys may appear for either side after the jury has been sworn.

■ In the case before us, the State, in its general statement to the jury panel prior to individual voir dire, announced there would be someone coming in to assist the prosecution and actually named that person, *i.e.*, William Bowden. Thereafter, in his general statement to the panel, appellant's attorney questioned the panel of its knowledge of the parties and inquired of numerous names but not that of William Bowden. Appellant, the court, and the jury were, in our opinion, properly advised of the existence of a special prosecutor and his name at the beginning of voir dire. Appellant's failure to inquire as to the panel's knowledge of and acquaintance with Mr. Bowden cannot be considered by us as a denial of his right to inquire for the purposes of ascertaining possible grounds for a challenge for cause or for a peremptory challenge. No abuse of discretion is shown. We overrule appellant's fifth ground of error.

Appellant complains of the court's refusal to suppress the introduction into evidence of a gun taken from his auto by the arresting officer without benefit of a warrant. He contends there is no justification for the warrantless seizure of the weapon, that it is error to admit the weapon into evidence, and that the error is of sufficient magnitude to warrant reversal. We disagree.

The deputy sheriff arrested appellant in a cafe while appellant was using the telephone shortly after the shooting. Appellant complains not of the legality of the arrest but of the subsequent search of his auto and the seizure of the weapon from

his auto. It is therefore necessary to set out the facts pertinent to this contention.

The arresting officer testified that after he handcuffed appellant in the restaurant and without giving appellant the *Miranda* warnings, he asked appellant what he had done with the gun. The court did not permit appellant's response after objection. The officer escorted appellant outside and placed him in the officer's auto. The officer then drove next to appellant's auto, walked over to the auto, found it locked, and noticed a weapon in open view on the front seat. The officer returned to his auto and asked appellant for the keys to appellant's auto. Appellant indicated the keys were in his pocket, and the officer removed them from his jacket, went back to appellant's auto, unlocked it, removed the weapon from the front seat, locked the auto, made arrangements for a wrecker to pick up and impound the auto, and drove appellant to the sheriff's office in Sheffield. At trial the arresting officer identified the gun as the same gun he removed from appellant's auto. The State offered the gun into evidence, appellant objected, but failed to obtain a ruling from the court.

■ Appellant contends that the seizure of the gun without a warrant is not justified, and its admission is improper, extremely harmful, and prejudicial to him because the State offered evidence that the bullet found in the body of the deceased had been fired from the gun in question. The State asserts that the seizure of the gun in question is justified and its admission proper because the pistol would have been discovered in the inventory of appellant's auto that occurred some two hours after the seizure of the gun. We agree with the State. The arresting officer testified that he impounded the auto, he did not drive appellant's auto to the station because of a lack of manpower, that because the gun was "in plain view" he removed it from the auto, locked the auto, and entrusted the possession of the auto and keys to the wrecker driver for transportation to the place of impoundment. The record reflects no alternatives were available other than

impoundment to ensure the protection of the vehicle and its contents. *See Benavides v. State,* 600 S.W.2d 809, 811 (Tex. Crim.App.1980). A subsequent inventory was made pursuant to established non-criminal, safekeeping procedures.

■ In any event, appellant admitted shooting the deceased with "the .45 calibre weapon that's here in evidence." Appellant's direct testimony while presenting his defense cures any possible error in the admission of the gun in question under the doctrine of curative admissibility. *See Preston v. State,* 481 S.W.2d 408, 409 (Tex. Crim.App.1972).

Accordingly, we hold that the trial court did not err in overruling appellant's motion to suppress and admitting the gun into evidence, and we overrule appellant's sixth ground of error.

Appellant contends the trial court erred in admitting statements the deceased made to Joe Luce and John Kelly shortly before the shooting and after completing a phone conversation with appellant. The trial court permitted the witnesses to testify as to the deceased's statements to them made outside the presence of appellant concerning the deceased's intention to meet with appellant, that the deceased was not worried about meeting with appellant, that the deceased wished to speak to the appellant alone, and that he did not want appellant to come to his ranch.

■ We find the court did not err in admitting these statements. We hold that the testimony of Luce and Kelly concerning these statements is admissible as part of the *res gestae* and is explanatory of the meeting which the deceased planned to have and did have with appellant resulting in his death. *See Trostle v. State,* 588 S.W.2d 925, 929 (Tex.Crim.App.1979). We overrule appellant's seventh, eighth, and ninth grounds of error.

Appellant's next three grounds of error are based on the trial court's comments during the testimony of two of the State's witnesses and during the testimony of appellant.

During cross-examination, Ron Richardson, a firearms expert, testified that he test fired the gun in question and determined that the bullet removed from the deceased's body and the brass cartridges found in appellant's auto were fired from the gun in question. Appellant's attorney asked him what are the maximum and minimum loads of a .45 calibre bullet. Thereupon the court, *sua sponte*, commented as follows:

> I fail to see the relevancy of any of this, what load has to be behind a projectile in order to either have it come out of the end of the muzzle or not cause the gun to explode, Mr. Leon.

Appellant objected "to the court commenting on the evidence." The court then made the following comment:

> I just fail to see the relevancy of this, Mr. Leon, and I'm going to cut you off unless you explain—if you want to get into powder marks or things like that, fine, but I just fail to see why we need to go into what the minimum and maximum load of a .45 calibre bullet has to do with this case.

Appellant's attorney again objected and in answer to his objection the court ordered him to "get on with the case."

■ Appellant contends the cross-examination is extremely relevant because if the ammunition used for test firing was not identical with the ammunition used in the actual shooting, the conclusion as to the distance from which the fatal shots were fired by the next witness could have been different. From the court's comments it appears that the court would have reconsidered its relevancy ruling if appellant had made such an inquiry for the purpose of attacking the distance conclusion based on powder marks, but such did not occur with the witness Richardson. The only facts appellant sought to determine by the cross-examination of Richardson at that time were the minimum and maximum loads required to propel a bullet from a .45 calibre weapon and not cause the weapon to explode. We agree with the State that the evidence before the court at that stage of the trial establishes that the deceased had been shot with the gun in question. Therefore, whether the gun in question or any other gun could or could not shoot a particular type of shell load is irrelevant.

During the examination of Albert Rodriguez the trial court refused to admit a portion of a tape recording of a conversation which occurred between Rodriguez and Walter L. Collett during Rodriguez's pre-trial investigation of the case. Collett testified for the State that he overheard appellant state, "I killed the son-of-a-bitch," during a phone conversation with someone on the other end of the phone shortly before appellant's arrest. On cross-examination Collett testified that he did recall the conversation with Rodriguez but denied "telling him that I did not hear any conversations on the phone, because I definitely did." Collett admitted in further cross-examination that the answers he gave when questioned by Rodriguez were not intended to be correct answers. When asked whether he intended to lie to Rodriguez, Collett answered, "Well, I intentionally—I never intended to reveal all that I know, because I didn't want to get involved."

■ Rodriguez testified that during his pretrial investigation conversation with Collett, Collett told him he had not heard appellant make any statement on the day in question, that he taped the conversation, and that he had the tape with him and could play that portion of the conversation to the jury. At this point the State objected to the admission of the tape. We are of the opinion that the trial court did not err in refusing to admit the tape. The trial court's refusal was preceded by the court's comment to the effect that, since Collett admitted making a pretrial statement inconsistent with his testimony at trial but consistent with Rodriguez's testimony, the tape served no purpose. We cannot conclude this to be a comment on the weight of the evidence. In our opinion it is a mere explanation and interpretation of the testimony upon which the court based its ruling of immateriality. Even though the trial court should have proceeded within the

statutory guidelines of TEX.CODE CRIM. PROC.ANN. art. 38.05 (Vernon 1979) when ruling on the admissibility of the tape recording, we find no showing of harm to appellant or benefit to the State. The repetition of prior testimony in the course of its rulings by a trial court is harmless error. *Young v. State*, 644 S.W.2d 18, 21 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd).

Appellant, in answer to the question of whether he had a conversation with Paul Poerner concerning the fact that he was going to kill the deceased, answered as follows:

> That was never said. There was no such conversation like that ever, at no time, and people that were there at the time has testified here today.

After being admonished by the court to answer the question, appellant denied that such a conversation took place, after which the following occurred:

> THE COURT: And disregard the last statement of the witness as to anyone that was there would not testify to that. That's not evidence, members of the jury.
>
> \* \* \* \* \* \*
>
> MR. LEON: Your Honor, we would object to the court commenting on the evidence and the statements of the witness in the absence of an objection.

The court again instructed the jury to disregard the testimony and overruled appellant's objection. Appellant's attorney argues that when appellant made the statement concerning the testimony of other witnesses, he was referring to several specified witnesses who had testified earlier. We refuse to join in this conjecture as to whom appellant referred in his statement.

■ In our opinion, the State is correct in its argument that appellant's ground of error on appeal does not comport with the error raised at trial. Appellant based his objection at trial on the court's *sua sponte* comment on the weight of the evidence but his objection on appeal is based on the court's instruction to the jury to disregard

the portion of the testimony in question. Accordingly, we hold that nothing is presented for review and overrule appellant's tenth, eleventh, and twelfth grounds of error.

■ We next consider appellant's grounds of error concerning the interpreter the trial court appointed. Appellant contends the trial court erred in instructing the jury that Roberto Quintero, who testified through an interpreter, gave a specific answer when there was a controversy between the official interpreter and appellant's interpreter as to what the answer actually was. The record is void of exactly what "specific answer" the court instructed the jury to accept, but does reflect the court's request for the court reporter to "find the witness's last answer." However, the portion of the record the court requested the court reporter to read is not set out in the record. We cannot ascertain what portion of the record the court referred to as "the witness's answer." Nothing is presented for review.

■ Appellant further contends the trial court erred in denying his request that he be allowed to examine the official interpreter as to her qualifications as an interpreter. The record does not reflect a denial of appellant's request but reflects that the court permitted appellant's chosen interpreter to be present during the trial and to monitor the interpretations of the official interpreter, without objection.

Our scope of review is limited to an abuse of discretion by the trial court. Under the state of the record, appellant has shown no abuse of discretion. Absent such a showing we will not disturb the judgment of the court. *See Minor v. State*, 659 S.W.2d 161, 163 (Tex.App.—Fort Worth 1983, no pet.).

Accordingly, we overrule appellant's grounds of error thirteen and fourteen.

Appellant complains of the court's action in sustaining the State's objection to a portion of appellant's recross-examination of Harris, the arresting officer. The portion of the record pertinent to this ground of error reads as follows:

Q: So then you have no personal knowledge of your own as to really how Mr. Liveoak got choked do you, sir?

A: No, sir.

Q: You're not even aware of how many times he choked him, are you, sir?

A: No, sir.

Q: Or you're not even aware of the duration of the choking?

The trial court sustained the State's objection that the questions assumed facts not in evidence and instructed the jury to "disregard the statements of counsel as voiced." Appellant argues the court erred because the evidence established that the deceased was choking the appellant when appellant shot him, and the court's comment is therefore an impermissible comment on the weight of the evidence in violation of TEX.CODE CRIM.PROC.ANN. art. 38.05 (Vernon 1979).

We agree with appellant that there is prior testimony that the appellant stated to others that he shot the deceased because the deceased was choking him. Even though the court erred in sustaining the State's objection on this particular ground, we find the error to be harmless. Subsequent thereto, appellant testified that he shot the deceased because the deceased was choking him. The issue of whether the deceased was choking appellant when appellant shot him was therefore before the jury. We cannot conclude that the court's comments "served to weaken appellant's defense in the eyes of the jury." We overrule appellant's fifteenth ground of error.

Appellant's next ground of error complains of the court's action in permitting a lay witness to testify as to his opinion of how one person would choke another.

We find the objected to testimony about how one person would choke another helps determine the issue of whether the markings and bruises on appellant's neck, contained in the photographs of appellant taken shortly after his arrest and which he introduced into evidence, establish that appellant was choked. "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." 2 C. McCORMICK & R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1397 (Texas Practice 2d ed. Supp.1984). Accordingly, we overrule appellant's ground of error number sixteen.

In two grounds of error, appellant contends the trial court erred in overruling his motion for instructed verdict of acquittal tendered at the close of the State's evidence and retendered at the conclusion of all evidence. Appellant points out that, after the El Paso Court of Appeals reversed the first conviction and remanded the cause to the trial court for a new trial, he was reindicted and retried only for voluntary manslaughter. Appellant alleges it is therefore incumbent on the State, as part of its burden of proof, to establish that, in addition to causing the death of the deceased, appellant did so while acting under the immediate influence of a sudden passion arising from an adequate cause. Appellant asserts that the evidence is insufficient to support such a finding beyond a reasonable doubt.

Appellant relied on self-defense as legal justification for shooting the deceased. See TEX.PENAL CODE ANN. § 9.32 (Vernon Supp.1986). Appellant presented testimony of threats the deceased made against him and the deceased's reputation for being a violent person as well as prior incidents of hostility the deceased exhibited toward appellant. Appellant's version of the facts is that, while appellant was at the deceased's residence, the deceased subjected appellant to verbal castigation and threats. The deceased eventually calmed down, and he and appellant rode in appellant's car about the deceased's ranch. Later, the deceased was standing next to appellant's auto, and, without warning, grabbed appellant by the head, lifted him off the ground, and threw him against his

car. Appellant got in his car but could not start it. The deceased also got in the car on the passenger side and began choking appellant and threatening to kill him. Appellant stated he fired the gun to save his own life.

The State produced evidence of antecedent threats against the deceased made by appellant. Collett testified appellant entered his restaurant after the shooting, and he heard appellant say on the telephone, "I killed the son-of-a-bitch." Quintero testified appellant and the deceased argued outside appellant's auto for a short while before the shooting occurred. He also testified that after the first shot, the deceased then grabbed appellant's arm.

Voluntary manslaughter is "an indictable offense of which every element must be proved beyond a reasonable doubt to justify conviction. One of those elements is that the accused 'caused the death under the immediate influence of sudden passion arising from an adequate cause.'" *Hardaway v. State,* 699 S.W.2d 359, 361 (Tex.App.—San Antonio 1985, no pet.); *see Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); TEX.PENAL CODE ANN. § 19.04 (Vernon 1974).

"Sudden passion" is generally said to be manifested by an excited and agitated mind at the time of the killing caused by an act of the deceased. *Hobson v. State,* 644 S.W.2d 473, 478 n. 10 (Tex.Crim.App.1983); TEX.PENAL CODE ANN. § 19.04(b) (Vernon 1974). "Adequate cause" means cause that commonly would produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. TEX. PENAL CODE ANN. § 19.04(c) (Vernon 1974).

The jurors are the exclusive judges of the facts and can believe or disbelieve any portion of the testimony. They could disbelieve the testimony of the defendant that he shot the deceased solely because he believed he had to save his own life. *Esquivel v. State,* 506 S.W.2d 613, 615 (Tex. Crim.App.1974); TEX.CODE CRIM.PRO.

ANN. art. 36.13 (Vernon 1981) & art. 38.04 (Vernon 1979).

 At the same time, the jurors could have concluded from the facts that the prior threats, verbal castigation, and the assault on the defendant by the deceased, followed by the defendant trying to escape but being unable to start the engine, and further followed by the deceased choking the defendant, were sufficient to cause anger, rage, or resentment in appellant sufficient to render his mind incapable of cool reflection. *See Phillips v. State,* 700 S.W.2d 18, 20 (Tex.App.—Amarillo 1985, no pet.).

The jury verdict of a murder under the influence of sudden passion arising from an adequate cause is supported by the record. A rational trier of fact could have found the essential elements of a crime of voluntary manslaughter beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979).

We overrule appellant's grounds of error seventeen and eighteen.

In his final ground of error, appellant complains the trial court erred in speaking with a member of the jury during a recess at the close of the State's evidence. The juror spoke to the trial court in chambers, apologizing to the court for mumbling during the court interpreter's interpretation of a witness' testimony. The trial court informed counsel for both sides of what transpired.

TEX.CODE CRIM.PROC.ANN. art. 36.-22 (Vernon 1981) provides, in part:

No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court.

Clearly, the conversation occurred in the presence of and by permission of the court.

 We find no harm in what transpired. The juror learned nothing new about the case nor did the court indicate to her the truth or effect of her interpretation. The trial court did not commit a

reversible error. Appellant's nineteenth ground of error is overruled.

Having found no reversible error in the proceedings, we overrule appellant's grounds of error and affirm the judgment of the trial court.

ESQUIVEL, Justice, dissenting.

In my opinion, Appellant sufficiently preserves his objections regarding the State's burden of proof for our review. I disagree with the majority opinion in its holding that the State met its burden of proving sudden passion based on the evidence in this record.

I am of the opinion that appellant's conviction should be reversed and remanded with instructions to the trial court to enter a judgment of acquittal.

From the record I would agree with appellant that the state's version of the case was that of a premeditated killing complete with antecedent threats by appellant. The witness Collett testified that appellant came into his restaurant after the shooting. He heard the appellant say on the phone: "I killed the son-of-a-bitch." The witness Linda Harris, Deputy Sheriff Harris's wife, testified that appellant phoned their office from the restaurant after the shooting. When she answered the phone appellant stated that he had shot the deceased with a "45" because the deceased was "choking him or had choked him." The witness Quintero testified that appellant and the deceased, the witness's boss, argued outside of appellant's auto for a short while. Quintero testified that appellant participated in the following series of events: appellant got in his car, stepped out of his car, fired a shot at the deceased, got back in his auto, shot the deceased who had also got in the car, and finally, after the shooting, appellant pushed the deceased out of the auto and drove off.

Appellant's entire case was one of self-defense. Threats made by the deceased and the deceased's reputation for being a violent person were the basis of the defense. Testimony existed in the record as to a communicated threat by the deceased against the appellant shortly prior to appellant's visit to the deceased's ranch. The witness Stephen testified as to the necessity for his company having to obtain a temporary restraining order against the deceased approximately 2½ years before the shooting in question. The witness Hanson testified that appellant told her on the phone the day of the shooting that he "had to do it, he was choking me to death." The witness Echart testified that he accompanied appellant's brother to the sheriff's office in Sheffield and heard appellant tell his brother that the deceased tried to kill appellant: that "he tried to kill me." The witness Talley testified that the deceased broke the witness's nose and dentures in a fight on Super Bowl Sunday, 1981. The witnesses Fuentez and Sage, former police officers in Ft. Stockton, testified that on March 30, 1980, they arrested the deceased for driving while intoxicated. While the deceased was being handcuffed a struggle ensued and it took four policemen to put the deceased in their patrol car. The witness McInally testified that the deceased had a reputation for being a person of "violent aggressive and dangerous disposition." The witness Fitzhenry testified as to an incident that occurred in deer season, i.e. January 1980, wherein the deceased and another fired shots at the witness and his companion and attempted to ram their truck while chasing them all the way to Rock Springs. The defendant testified that he shot the deceased in self-defense; that as he was attempting to leave the deceased's ranch in his car after having been roughed up by the deceased, the deceased reached in and started choking him; appellant tried to get in the back seat then shot the deceased; that the deceased kept telling appellant he was going to kill him; that the choking relaxed after the shooting and he pushed the deceased out the door and drove off. The witness Wright testified he was with the deceased during the incident testified to by the witness Fitzhenry.

"Sudden passion" is generally said to be manifested by an excited and agitated mind at the time of the killing caused by an act of the deceased. *Hobson v. State*, 644 S.W. 2d 473, 478 n. 10 (Tex.Crim.App.1983);

TEX.PENAL CODE ANN. 19.04(b) (Vernon 1974). "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. TEX. PENAL CODE ANN. 19.04(c) (Vernon 1974).

In the instant case appellant removed his gun from the glove compartment prior to being grabbed and choked by the deceased. While the attack of the deceased on appellant inside the auto raised the issue that appellant shot the deceased in self-defense, there is no showing that appellant shot the deceased under circumstances which would constitute the offense of voluntary manslaughter. *See Luck v. State,* 588 S.W.2d 371, 375 (Tex.Crim.App.1979), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980).

Absent such evidence I conclude that the state failed to meet its burden. I would sustain appellant's ground of error number eighteen.

Accordingly I would reverse the conviction and remand this case to the trial court with instructions to enter a judgment of acquittal. *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15, 21 (1978).