Juan RODRIGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–94–00718–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 20, 1995.

John Fahle, San Antonio, for appellant.

Alan E. Battaglia, Assistant Criminal District Attorney, San Antonio, for appellee.

Before RICKHOFF, HARDBERGER and DUNCAN, JJ.

## OPINION

RICKHOFF, Justice.

Appellant was convicted of murder and sentenced to forty years imprisonment. Appellant argues that the trial court erred by (1) overruling his motion to suppress; (2) refusing to allow literacy testing of Venireman # 28; (3) finding that the State had overcome appellant's *Batson* challenge; (4) refusing to allow testing of the qualifications of the State's character witnesses; and (5) admitting the testimony of the State's character witnesses regarding their opinions of appellant's reputation. We affirm.

## SUMMARY OF FACTS

Appellant was convicted of murder in the stabbing death of Richard Villanueva. Villanueva's body was found next to his truck in a parking lot with his pockets turned inside out. The State produced witnesses who testified that appellant told them that he had killed Villanueva and taken his money while Villanueva was passed out in his truck. The witnesses further testified that appellant's clothes were bloody, and the clothes worn by appellant on the night of the murder were admitted into evidence.

After the State rested, appellant took the stand on his own behalf and testified that he killed Villanueva in self-defense during a struggle after Villanueva pulled a knife. Appellant further testified that he was trying to cooperate with the police and wanted to give them a written statement. Appellant also stated that he offered to give the police the clothes he was wearing the night Villanueva was killed. On re-direct, appellant moved for the admission of the written statement he gave police to support his testimony relating to his defense as a prior consistent statement.

## ARGUMENTS ON APPEAL

Appellant's first point of error raises a procedural issue regarding the trial court's requisite filing of findings of fact and conclusions of law. In his second, third and fourth points of error, Appellant contends the trial court erred in overruling his motion to suppress. Appellant also contends that the trial court erred during the voir dire process in failing to permit literacy testing of Venireman # 28 and in finding that the trial court provided racially neutral explanations for their strikes. Finally, appellant argues that error occurred as a result of the trial court's refusal to permit appellant to test the qualifications of the State's character witnesses outside the jury's presence and by the admission of the testimony of the State's character witnesses regarding their opinions of appellant's reputation.

### 1. Admissibility of Written Confession

In his second, third and fourth points of error, appellant challenges the trial court's overruling of his motion to suppress his written confession and the fruits thereof, which included the clothing he was wearing the night of the murder.

■ We do not need to reach the issue of whether the trial court abused its discretion in overruling the motion to suppress, because appellant waived his right to complain on appeal through his direct testimony and by introducing his written statement as evidence at trial. Where a defendant offers his confession as evidence at trial, any objection to the admission of such evidence is waived. *Decker v. State,* 717 S.W.2d 903, 908 (Tex.Crim.App.1983); *Morales v. State,* 466 S.W.2d 293, 300 (Tex.Crim.App.1970). Similarly, under the doctrine of curative admissibility, the admission of improper evidence cannot be asserted as grounds for reversal on appeal where the defendant, on direct examination, gives testimony establishing the same facts as those to which an objection was raised. *Thomas v. State,* 572 S.W.2d 507, 513 (Tex.Crim.App.1976); *Aguirre v. State,*

683 S.W.2d 502, 509 (Tex.App.—San Antonio 1984, pet ref'd). The only exception to this rule arises where a defendant testifies to refute, deny or impeach the evidence or testimony objected to; however, a waiver would still result in such circumstances if the defendant confirms the truth of such facts or evidence in attempting to create a defense based on those facts, unless the impact of the evidence impelled the defendant to testify. *Thomas,* 572 S.W.2d at 513.

In *Liveoak v. State,* the appellant, Leonard Liveoak, alleged self-defense in defending against a charge of murder. 717 S.W.2d 691, 693 (Tex.App.—San Antonio 1986, pet. ref'd). On appeal, Liveoak complained of the court's refusal to suppress the gun used in connection with the murder which Liveoak contended was improperly seized. *Id.* at 694–95. Liveoak admitted in direct testimony that he shot the decedent with the gun that was previously introduced into evidence. *Id.* at 695. This Court held that Liveoak's direct testimony cured any possible error in the admission of the gun under the doctrine of curative admissibility. *Id.*

In the instant case, appellant's testimony on direct examination established each fact contained in his written confession. Even assuming that it could be successfully argued that appellant was impelled to testify by the evidence previously introduced by the State, appellant's objection was further waived when he requested that his written statement be admitted as evidence over an objection by the State. Therefore, we conclude that appellant has waived all objections to the admission of his written confession and the fruits thereof.

Appellant's second, third and fourth points of error are overruled.

## 2. Findings of Fact and Conclusions of Law

■ In his first point of error, appellant contends that the trial court erred in failing to enter findings of fact and conclusions of law after finding that appellant's written statement was admissible as required by Tex.Code Crim.Proc.Ann. art. 38.22, § 6 (Vernon 1979). We note that although we received and filed a Supplemental Transcript containing the trial court's findings and conclusions, such findings were not made until after the trial court lost its jurisdiction. *Green v. State,* 906 S.W.2d 937, 939–40 (Tex. Crim.App.1995). However, the purpose for requiring a trial court to make findings of fact and conclusions of law is to provide a basis upon which the appellate court can review the trial court's application of the law to the facts. *Wicker v. State,* 740 S.W.2d 779, 783 (Tex.Crim.App.1987). Where the appellant has waived his right to complain about the trial court's ruling on a motion to suppress, the appellate court is not even required to consider the trial court's findings and conclusions. Therefore, we do not see how the appellant in such a case can be harmed by the failure to enter such findings and conclusions. While the better practice would be for the trial court to enter its findings and conclusions in every instance, where, as here, appellant has waived any complaint relating to such findings, we cannot conclude that the trial court's failure to enter such findings constitutes reversible error.

Appellant's first point of error is overruled.

## 3. Literacy Testing of Venireman # 28

In his fifth point of error, appellant contends that the trial court erred in refusing to allow defense counsel to test the ability of Venireman # 28 to read and write.

■ A juror who is unable to read and write may be stricken for cause. Tex.Code Crim.Proc.Ann. art. 35.16(a)(11) (Vernon 1989). The statutory requirement that a juror be able to read and write has been interpreted to require that the juror be able to express ideas in writing. *Allridge v. State,* 850 S.W.2d 471, 483 (Tex.Crim.App. 1991), *cert. denied,* —— U.S. ——, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). In assessing a juror's ability to read and write, courts have traditionally focused on the juror's ability to complete the juror questionnaire and the juror's ability to understand the special issues and instructions likely to be presented. *See id.* at 484; *see also Flores v. State,* 871 S.W.2d 714, 718–19 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 313, 130

L.Ed.2d 276 (1994); *Goodwin v. State,* 799 S.W.2d 719, 735–36 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991).

■ Appellant's argument does not focus on the trial court's refusal to strike Venireman # 28 for cause, but rather appellant argues that the trial court did not permit defense counsel to test the Venireman's ability to read and write. It is within the trial court's discretion to control or restrict voir dire examination. *Smith v. State,* 703 S.W.2d 641, 643 (Tex.Crim.App.1985). An abuse of discretion may be shown where a defendant is prevented from asking a proper question. *Nunfio v. State,* 808 S.W.2d 482, 485 (Tex.Crim.App.1991); *Smith v. State,* 703 S.W.2d at 643–44. In order to preserve error for appeal, the record must contain a question asked by the defendant which the trial judge did not allow to be answered. *Nunfio,* 808 S.W.2d at 484. If a proper question is not allowed, harm is presumed because the appellant would be unable to intelligently exercise his preemptory strikes. *Id.* at 485.

In the instant case, defense counsel requested Venireman # 28 to read the statute underlying the charge; however, the trial judge refused to require him to do so to prevent the juror from being embarrassed. The trial judge indicated, however, that defense counsel could ask additional questions. Defense counsel did not read the charge to Venireman # 28 and ask additional questions. Defense counsel did not read the charge to Venireman # 28 and ask whether he understood the charge, but rather asked the juror if he understood the meaning of certain words. Although the juror's wife had completed the juror questionnaire, the juror testified that he read English a little bit, but not that much. The juror further testified that he went to school through the 10th grade and understood the meaning of the words "guilt" and "innocence," but not the words "presumed" or "burden."

We cannot conclude that the trial court abused its discretion in refusing defense counsel's request that the juror read the statute, where the trial court stated that defense counsel could ask additional questions. Defense counsel's decision not to continue to question the juror regarding the extent of her understanding of the statute should not be grounds for reversal.

Appellant's fifth point of error is overruled.

### 3. *Batson* Challenge

■ In his sixth point of error, appellant complains that the trial court erred in finding that the State had overcome the presumption that their preemptory strikes were racially motivated. At trial, appellant proffered that of the jurors on the panel, 24 were Hispanic, 16 were Caucasian and 3 were black. Since the State used 8 of its 10 strikes against Hispanics and the remaining 2 strikes against blacks, appellant contended that there was a prima facie showing that the strikes were made on the basis of race.

■ It is constitutionally impermissible to exercise preemptory challenges on the basis of race. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Once a prima facie case of racial discrimination is shown with respect to the exercise of preemptory challenges, the proponent of the strikes has the burden to produce race-neutral explanations for the strikes. *Purkett v. Elem,* ⸺ U.S. ⸺, ⸺ ⸺ ⸺, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 839 (1995). If a race-neutral explanation is given, the opponent of the strikes must prove purposeful racial discrimination. *Id.* The burden of persuasion regarding racial motivation never leaves the opponent of the strikes; therefore, the race-neutral explanation given by the proponent of the strikes is not required to be persuasive, but merely facially valid. *Id.*

■ A trial court's finding that preemptory strikes were not racially motivated will be upheld on appeal so long as the finding is not "clearly erroneous." *Whitsey v. State,* 796 S.W.2d 707, 723–24 (Tex.Crim.App.1989). In determining whether the trial court's decision is "clearly erroneous," we must review the record and decide if we are left with a firm and definite conviction that a mistake has been made. *Hill v. State,* 827 S.W.2d 860, 865–66 (Tex.Crim.App.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). In doing so, the evidence is viewed in

 **141**

the light most favorable to the trial court's rulings. *Id.*

In the instant case, the prosecutor indicated that Venireperson #2 was stricken because he did not like her demeanor and the manner in which she responded to some of his questions. With respect to Venireperson #11, the prosecutor felt that she could not articulate the meaning of beyond a reasonable doubt. According to the prosecution's testimony, Venireperson #16 was stricken based on the prosecution's belief that he was still recovering from a concussion. The prosecutor further explained that Venireperson #21 was stricken based on his response to questioning relating to his deferred adjudication on a failure to stop and render aid. With respect to Venireperson #35, the prosecution stated that he was stricken based on his confusion as to the assessment of punishment when he served on a prior jury panel where the defendant was found not guilty. Finally, the prosecution struck Venireperson #39 due to her lack of interest in her job which caused concern as to what her level of interest would be as a juror.

Viewing the record as a whole and the reasons provided by the prosecution, we are not left with a firm and definite conviction that a mistake has been made. Therefore, we conclude that the trial court's finding that the preemptory strikes were race-neutral is not clearly erroneous.

Appellant's sixth point of error is overruled.

### 4. Qualification of Character Witnesses and Nature of Opinion

In his seventh and eighth points of error, appellant contends that the State's witnesses were impermissibly allowed to testify as to their opinion regarding appellant's reputation and that the trial court erred in refusing to permit defense counsel to test the witnesses' qualifications outside the jury's presence.

 Three basic methods are available for proving character: (1) reputation of the person in the community; (2) personal opinion testimony of witnesses who know the person; and (3) specific instances of conduct of the person from which inferences may be drawn. *Hedicke v. State*, 779 S.W.2d 837, 839 (Tex.Crim.App.1989), *cert. denied*, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 836 (1990). The primary distinction between reputation and character or opinion witnesses is the ability to cross-examine reputation witnesses with questions regarding whether the witness has heard acts or reports which are inconsistent with the witness's opinion. *Id.; see also Rutledge v. State*, 749 S.W.2d 50, 51–52 (Tex.Crim.App. 1988).

In the instant case, the State asked its witnesses whether they had an opinion about the appellant's character in the community for being peaceful and law-abiding. Defense counsel objected and requested permission to test the witnesses' qualifications outside the jury's presence, noting that the question was not phrased as a personal opinion, but an opinion as to reputation.

The phrasing of the question itself was not impermissible, and appellant's eighth point of error is overruled. *Jones v. State*, 641 S.W.2d 545, 552 (Tex.Crim.App.1982) (testimony regarding opinion as to reputation); *Lopez v. State*, 860 S.W.2d 938, 945 (Tex. App.—San Antonio 1993, no pet.) (offer of proof to determine basis for opinion as to reputation). However, based on the wording of the question, it would appear that defense counsel should have been permitted to test the qualifications of the character witnesses before they testified. *Crawford v. State*, 480 S.W.2d 724, 726 (Tex.Crim.App.1972); *Lopez v. State*, 860 S.W.2d at 945. The failure to permit such questioning constitutes error; however, there is no bill of exceptions in the record which would enable us to determine whether the witnesses were or were not qualified. Because the record fails to show that the State's witnesses were not qualified, no error was preserved. *Jones v. State*, 641 S.W.2d at 552.

Appellant's seventh point of error is overruled.

### CONCLUSION

The trial court's judgment is affirmed.