NO. 07-07-0051-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 30, 2008
_____

SARAI GOMEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY;

NO. 05-835-K26; HONORABLE BILLY RAY STUBBLEFIELD, JUDGE
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

_____**MEMORANDUM OPINION**


Appellant, Sarai Gomez, appeals her conviction and life sentence for capital murder contending that the trial court failed to make findings of fact and conclusions of law regarding the voluntariness of her confession, erroneously admitted her videotaped and written confession, and failed to properly instruct the jury regarding the issue of the voluntariness of a confession. We affirm.

Background

On May 30, 2005, appellant was babysitting three children at a home in Hutto, Texas. During the evening meal, appellant was feeding the children when the child victim began choking. Appellant was unable to remove the food from the child's mouth and ran to a neighbor's home to ask for help. The neighbor contacted 911 and waited for an emergency response team; while they waited, another neighbor attempted CPR but was unsuccessful.

The Hutto Fire Department arrived and began attempting to remove food from the child's mouth in order to provide oxygen with a valve bag. When Williamson County paramedics arrived, they determined that the child needed to be transported to Round Rock Hospital. While transporting her to the hospital, the paramedics were unable to intubate the child and used forceps to remove additional food from the child's mouth. At the hospital, the doctor also had to use forceps to remove more food and eventually was able to intubate the child; however, by this point the child was in critical condition. The doctor then made the decision to have the child moved to the Children's Hospital in Austin. When the child arrived at the Children's Hospital, the child was unable to breath on her own and was placed on a ventilator. Additionally, the child had retinal hemorrhages, bruising on her face, and a basal skull fracture. On June 1, the child passed away. An autopsy performed on the child declared that the child died due to a lack of oxygen to the brain caused by choking.

While at the Children's Hospital in Austin, appellant spoke with investigating officers and admitted to being the caretaker of the victim. On June 8, 2005, appellant went to an office for the Texas Department of Public Safety and spoke with DPS Sergeant Enrique Muniz. The interview with Sergeant Muniz was videotaped. In the course of the interview, appellant admitted to hitting the child and to placing her finger in the child's mouth to push food into her mouth. As a result of the interview, appellant wrote two statements recording the events of the day the child choked. The first statement detailed appellant's story of how the child hit her head while appellant bathed her and the second statement detailed appellant's use of her finger to put food into the child's mouth. While incarcerated at the Williamson County Jail, telephone conversations between appellant and her sister were recorded where appellant admitted to "jamming" food into the victim's mouth and to pleading guilty because "she did it." At trial, the State admitted into evidence a copy of the videotaped confession and the two written statements, over appellant's objections. At the conclusion of the trial, the jury found appellant guilty and appellant was sentenced to life imprisonment in the Texas Department of Criminal Justice-Institutional Division.

Appellant now appeals raising three issues. Appellant contends that the trial court (1) failed to enter findings of fact and conclusions of law, as required by article 38.22 of the Texas Code of Criminal Procedure; (2) erroneously admitted into evidence a videotaped interrogation and written statement from appellant; and (3) failed to instruct the jury on the issue of the voluntariness of appellant's statements within the jury charge.

Finding of Facts and Conclusions of Law

Under Article 38.22 Section 6 of the Texas Code of Criminal Procedure[1]

The purpose for requiring a trial court to make findings of fact and conclusions of law is to provide a basis on which an appellate court can review the trial court's application of the law to the facts. Rodriguez v. State, 919 S.W.2d 136, 139 (Tex.App.–San Antonio 1995, no pet.). A trial court sufficiently complies with the mandatory requirement to file findings of fact and conclusions of law regarding the voluntariness of a defendant's statement when the trial court dictates its findings to the court reporter at the end of the hearing. Murphy v. State, 112 S.W.3d 592, 601 (Tex.Crim.App. 2003).

In this case, at the conclusion of the pretrial hearing regarding the voluntariness of appellant's confession, the court denied appellant's Motion to Suppress. Based on that ruling, the State specifically requested that the trial court make findings of fact and conclusions of law. In response, the trial court stated,

> I reviewed the entire transcript of the interrogation, made very clear to the Defendant that she was not in custody, and her statement was not induced by any promises. In fact, it was quite clear from the transcript the officer commented extensively that it was to her benefit to cooperate but that he had no control over decisions made by the District Attorney in this County, and that – that the Court finds that at no time was she coerced or was induced to make the statement involuntarily.

Therefore, we conclude that the trial court did indeed comply with section 6 of article 38.22. See id. at 601-02. We conclude that these findings are sufficient to provide this

---

[1]Further references to the Texas Code of Criminal Procedure will be by "article ___."

court a basis upon which to review the trial court's application of the law to the facts particular to this case.  We overrule appellant's first issue.

### Admission of Videotape and Written Confession

Generally, a trial court's ruling on a motion to suppress is reviewed by an abuse of discretion standard.  Oles v. State, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999).  However, when presented with a question of law based upon undisputed facts, an appellate court performs a *de novo* review of the trial court's ruling.  Id.; Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).  Before a promise will render a confession inadmissible, it must be shown that the promise induced the confession.  Muniz v. State, 851 S.W.2d 238, 254 (Tex.Crim.App. 1993).  In order to induce the confession, a promise must be (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an influential nature that a defendant would speak untruthfully in response thereto.  Id.

Appellant raises the issue of voluntariness by complaining of the admission of the videotape of the appellant's interview with Muniz as well as the second written statement given by appellant.  Appellant contends that Muniz made comments regarding appellant's son that were meant to induce appellant to confess.  Specifically, appellant contends that Muniz stated that it would be better for appellant to cooperate, that appellant needed to consider whether she wanted the chance to be with her son someday, and that she needed to take advantage of the opportunity that the police were giving her to tell the truth.

There is no dispute that Muniz did, in fact, make those remarks to appellant; the dispute is the effect of such remarks.  Consequently, we review the trial court's ruling to

5

admit the videotape and statements *de novo*. See Oles, 993 S.W.2d at 106. At the outset of Muniz's meeting with appellant, Muniz explained that his role at the meeting was to act as intermediary between appellant and the Hutto police. Muniz further informed appellant that she was not under arrest. Next, Muniz explained to appellant that the Hutto police were seeking a written statement from her and asked whether she would provide a statement. After appellant wrote down a statement, Muniz began encouraging her to tell more of the story. Muniz began speaking to appellant about the inconsistencies in appellant's statement and the evidence in the case. Muniz spoke to her about the autopsy, the statement of one of the other children detailing appellant sticking her finger in the victim's mouth, and the statements from paramedics and doctors stating that the food in the victim's mouth was not chewed, as would normally be expected. Muniz then attempted to gain appellant's confidence by telling her that good people sometimes make mistakes and that, by accepting responsibility, appellant could better the situation. Appellant began to tell Muniz about how she felt pressured by taking care of several children. Muniz encouraged appellant to continue to tell what had happened that day. As the interview continued, appellant admitted to hitting the children on occasion and rushing the children to eat on the day that the child died. After appellant raised the fact that she had a son, Muniz stated,

> If you, the life of your son is worth more than that, then . . . I recommend . . . that here is your chance, and like I told you a while ago, you're going to have to trust me. And . . . I don't have anything to do, nothing for the . . . for this cause, they're not going to give me anything . . . a prize, nothing. I just want to do . . . what the best thing is for the little girl, for you, for your son, for the family. And all of that, what happened, unfortunately already happened. . . I'm just telling you what it is . . . and that you accept responsibility, and if you

6

really love your child, the way you love him . . . and maybe you want a future with your son . . . here is the opportunity.

As appellant continued to be more forthcoming with information, Muniz continued to encourage her to tell more by stating,

Sarai, tell me everything that happened that day. The truth. Please for your own good, for the good of your son. It's better to be able to talk with someone about this, for here is your chance, so that you can get all of this off your insides. And I swear to you, that you're going to feel better. Then we will have a place to start off from, and we'll go forward then.

Appellant then confessed and Muniz asked her to write down her statement. After appellant gave the written statement confessing to the offense, Muniz informed appellant that they would have to wait to see what the district attorney wanted to do next.

Reviewing the totality of the circumstances, appellant was not given any indication that she was under arrest prior to the interview. In fact, at the commencement of the interview, Muniz clearly stated to appellant that she was not under arrest. Muniz further stated that he was not offering any incentives and that he had nothing personal to gain by getting appellant to confess. Throughout the interview process, Muniz explained to appellant that he was looking for the truth and pointed out to appellant the inconsistencies between her first written statement and the evidence that had been gathered. In our review, we conclude that Muniz did not induce or attempt to induce appellant into providing a confession in exchange for any promised benefit. Therefore, we conclude that the complained of actions of the officer were not of such an influential nature that it induced appellant to speak untruthfully in response. Muniz, 851 S.W.2d at 254. Thus, the trial

court did not commit error in admitting the videotape and appellant's written statement because the admitted evidence was not the result of an inducement or promise of the type to render the confession inadmissible. We overrule appellant's second issue.

Requested Jury Instruction

The first step in deciding upon an appropriate jury instruction regarding voluntariness of a statement is identifying the theory of involuntariness being claimed by the defendant. See Oursbourn v. State, No. PD 1687-06, 2008 WL 2261744, at *4 (Tex.Crim.App. June 4, 2008). Potential "involuntary" confession fact scenarios encompassed by article 38.22 are broader than those covered by the Due Process Clause or Miranda. Id. at * 7. Other bases for a claim that a statement was involuntarily given, such as youth, intoxication, or mental retardation are rarely, by themselves, sufficient to render a statement as inadmissible, but are factors that a jury, armed with a proper jury instruction, are entitled to consider. Id. An article 38.22, section 6, "general" instruction asks the jury: "Do you believe, beyond a reasonable doubt, that the defendant's statement was voluntarily made? If it was not, do not consider the defendant's confession." Id. A "specific" instruction under article 38.23(a), is fact based and asks the jury a more specific question such as, "Do you believe that the statement made by defendant was induced by the officer's actions? If so, do not consider the defendant's confession." Id. It is the defendant's responsibility to delineate which type of "involuntariness" he is claiming–a general (perhaps subjective) lack of voluntariness or a specific police-coerced lack of voluntariness - because the jury instruction is very different depending upon the type of claim. Id.

8

At the jury charge conference, appellant requested a jury instruction on the voluntariness of her statement. Appellant proposed the following jury instruction:

> You are instructed that under our law a statement of a defendant made while under arrest or in custody may not be used in evidence against a defendant unless it appears that the statement was freely and voluntarily made, without compulsion or persuasion. Now, therefore if you find from the evidence or if you have a reasonable doubt thereof that at the time of the making of the statement, if any, to Detective Muniz the Defendant was induced by persuasion to make such a statement, if any, by Detective Muniz by telling and promising the Defendant that "How much is the life of your son worth? Here is your chance so that really – let's see how much really you appreciate that little boy. That boy, his mother some day, and the question is are you going to want to have a chance to be with him or not?" The other: And if you further find that Officer Muniz said "And if you really love your child the way you love him, and maybe you want a future with your son further, here is the opportunity" then you will completely disregard such statement as evidence for any purpose, or will you consider any evidence obtained as a result thereof.

The trial court denied the request. When a defendant requests a "specific" instruction related to voluntariness as a result of police coercion, the evidence heard by the jury must (1) raise an issue of fact; (2) be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the statement claimed to be involuntary. Id. at *10. If there is no disputed factual issue, the legality of the conduct is determined by the trial court as a question of law. Id.

In this case, appellant's proposed jury instruction specifically asked whether the police action induced or persuaded appellant to confess. As such, appellant was not requesting a "general" instruction on voluntariness, but rather a "specific" instruction on

9

voluntariness under article 38.23.[2] Since there is no factual dispute on how the evidence was obtained, we conclude that the trial court did not err in failing to include an article 38.23 jury instruction.  Id. at *12 n.85.

As to whether the trial court was required to include a "general" instruction on voluntariness, under section 6 of article 38.22, an instruction becomes necessary when the parties litigate a section 6 voluntariness issue before the judge.  Id. at *9.  Since the trial court held a pretrial hearing on the issue of voluntariness, appellant was entitled to an instruction under section 6 of article 38.22.  But because appellant never requested a "general" voluntariness instruction, she is entitled to a review of that error only under Almanza's "egregious harm" standard.[3]  Id. at *13.

Reviewing the facts, as discussed in the second issue, the totality of the circumstances do not support a finding of egregious harm.  Along with appellant's confession and videotape interview, the jury had testimony from the neighbors, firefighter, paramedics and doctors, who all testified to finding unchewed food in the child's mouth. One of the other children also testified to observing appellant place food in the victim's mouth with her fingers.  Further, the jury heard of appellant's phone calls to her sister

---

[2] Although appellant claims in her brief that the requested instruction was a 38.22 charge and that everyone at trial understood it to be a 38.22 charge, notwithstanding that appellant's trial attorney requested the charge by citing article 38.23, we have read the record and conclude, viewing the discussion of the proposed charge in context, that appellant's trial attorney did indeed intend to make his request under article 38.23.

[3] If the defendant does not present a proposed jury instruction, any potential error in the charge is reviewed only for "egregious harm" under Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

10

admitting to the offense.  Finally, the jury heard about the autopsy which concluded that the victim died from choking on food.  We conclude that the trial court's failure to include a "general" instruction on voluntariness did not injure the rights of appellant to have a fair and impartial trial.  <u>Almanza</u>, 686 S.W.2d at 172.  We overrule appellant's final issue.

## Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

Mackey K. Hancock
Justice

Quinn, C. J., concurring in result.

Do not publish.