No. 04-97-00688-CR



Perry Solomon AGUILAR,


Appellant



v.



The STATE of Texas,


Appellee



From the 187th Judicial District Court, Bexar County, Texas


Trial Court No. 96-CR-6180


Honorable Peter Michael Curry, Judge Presiding



Opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Catherine Stone, Justice


Delivered and Filed: September 30, 1998


AFFIRMED


 Appellant, Perry Solomon Aguilar ("Aguilar"), was convicted of aggravated sexual assault
and sentenced to life in prison. In three points of error, Aguilar appeals his conviction, claiming the
trial court erred in admitting: (1) testimony that Aguilar was on parole for sexual assault at the time
the offense occurred; and (2) expert testimony regarding DNA testing. We overrule Aguilar's points
of error and affirm the judgment of the trial court.

Testimony Regarding Parole Status


 In his first and second points of error, Aguilar challenges the admission of testimony by an
officer and the complainant's mother that Aguilar was on parole at the time the offense occurred.(1)
The State contends that any error in admitting this testimony was cured by subsequent evidence
introduced by the defense. The State notes that no objection was made to the appellant's testimony
on cross-examination that he had previously been convicted for aggravated rape and attempted rape
and was sent to prison for a term of years for each conviction. In addition, the State asserts that
Aguilar's mother testified regarding Aguilar's criminal history, and, finally, Aguilar's trial counsel
introduced Aguilar's written statement into evidence in which Aguilar stated that he was on parole
for attempted sexual assault.

 Under the doctrine of curative admissibility, the admission of improper evidence cannot be
asserted as grounds for reversal on appeal if the defendant offers evidence of substantially the same
facts. Thomas v. State, 572 S.W.2d 507, 512-513 (Tex. Crim. App. 1976); Rodriguez v. State, 919
S.W.2d 136, 138-39 (Tex. App.--San Antonio 1995, no pet.). An exception to this doctrine exists
for evidence introduced by the defendant to refute, deny or impeach the evidence or testimony to
which an objection was made. Thomas v. State, 572 S.W.2d at 512-13; Rodriguez v. State, 919
S.W.2d at 139.

 In this case, Aguilar offered evidence regarding his prior conviction and parole status through
his own testimony, his written statement that he offered into evidence, and the testimony of his
mother. The exception to the doctrine of curative admissibility does not apply under the facts
presented in this case. Therefore, any error by the trial court in admitting the testimony regarding
Aguilar's parole status was waived. Aguilar's first and second points of error are overruled.

DNA Testing 


 In his third point of error, Aguilar contends the trial court erred in admitting expert testimony
regarding DNA testing "because of a lack of proof of the scientific basis for the tests and the
statistical basis for the serologist's evaluation." The State counters that the trial court did not abuse
its discretion in admitting the testimony because the expert testified as to the accepted validity of the
testing employed, the acceptance of DNA testing as reliable in the scientific community, and the
performance of the testing in accordance with accepted, standardized procedures. The State further
contends that the expert's testimony regarding the validity of the underlying scientific theory and
the technique for applying the theory was unnecessary in light of its well-established acceptance by
various courts, including the Texas Court of Criminal Appeals.

 We review the trial court's admission of the expert testimony under an abuse of discretion
standard. See Kelly v. State, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992). Applying this standard,
we must determine whether the trial court's ruling was "within the zone of reasonable disagreement"
given the evidence presented and the requirements of rule 702 of the Texas Rules of Criminal
Evidence. Id.

 In order for evidence derived from a scientific theory to be admissible, the evidence must
satisfy the following three-part reliability test: (1) the underlying scientific theory must be valid; (2)
the technique applying the theory must be valid; and (3) the technique must have been properly
applied on the occasion in question. See Nenno v. State, 970 S.W.2d 549, 560 (Tex. Crim. App.
1998) (extending Kelly test to all expert testimony); Hartman v. State, 946 S.W.2d 60, 63 (Tex.
Crim. App. 1997) (extending Kelly test to all scientific evidence); Kelly, 824 S.W.2d at 573
(adopting test for novel scientific evidence). Factors a trial court may consider in determining
reliability include, but are not limited to, the following: (1) the extent to which the underlying
scientific theory and technique are accepted as valid by the relevant scientific community, if such
a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence
of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential
rate of error of the technique; (5) the availability of other experts to test and evaluate the technique;
(6) the clarity with which the underlying scientific theory and technique can be explained to the
court; and (7) the experience and skill of the person(s) who applied the technique on the occasion
in question. Kelly, 824 S.W.2d at 573. The burden of persuasion is enhanced with regard to the
admissibility of scientific evidence, and the proponent is required to prove reliability by clear and
convincing evidence.(2) Id.

 Aguilar complains of the testimony by Garon Foster, a forensic serologist with the Bexar
County Forensic Science Center. Foster had been employed by Bexar County for three years. He
has a bachelor's degree in serology from the University of Texas at Austin and a master's degree in
forensic science from the University of Alabama in Birmingham.

 Foster performed DNA testing on the complainant's blood sample contained in the rape kit
received from the hospital and on a blood sample taken from Aguilar. Foster also identified human
blood on a pair of Aguilar's jeans recovered from the crime scene. Foster testified that the DNA
procedure conducted in this case is called polymerase chain reaction, commonly known as PCR,
which looks at a very small area of a genetic structure and amplifies that area to make it visual.
After the genetic structure is amplified from two sources, the two structures can be compared side
to side to determine whether they match.

 The genetic structure from the complainant's blood and Aguilar's blood were compared with
the genetic structure of the blood taken from the jeans. Aguilar was excluded as being the donor,
but the complainant was not excluded. The complainant's genetic structure was then compared to
a data base generated by the F.B.I., and a statistical analysis was performed. Foster testified that the
complainant's genetic structure occurs in approximately 335,000 Caucasian individuals, one in every
38,000 African Americans, one in every 68,000 southeastern Hispanics, and one in every 33,000
southwestern Hispanics.

 Foster testified that the PCR tests and the subsequent statistics he obtained are accepted as
reliable in the scientific community and thousands and thousands of laboratories across the country
perform PCR analysis on DNA type samples. Foster estimated that 100 to 200 forensic laboratories
perform PCR and basic statistical analysis. Foster testified that he properly conducted the DNA tests
in this case and confirmed the results. Although Aguilar's trial counsel cross-examined Foster, no
controverting scientific evidence was presented.

 Applying the Kelly factors in this case: (1) Foster testified regarding the acceptance of PCR
testing and statistical analysis in the scientific community; (2) Foster has a master's degree in
forensic science and three years experience in DNA testing; (3) an estimated 100 to 200 forensic
laboratories perform PCR testing, indicating numerous experts are available to testify regarding the
technique; and (4) Foster was able to explain PCR testing with clarity. We conclude that Foster's
testimony satisfied the Kelly test and hold that the trial court did not abuse its discretion in admitting
that testimony.(3)

 In its brief, the State requests this court to go a step further and hold that with regard to
forensic DNA, the validity of the underlying scientific theory and the technique for applying that
theory have been established to be reliable as a matter of law. See Hartman, 946 S.W.2d at 63
(Keller, J., concurring) (suggesting that reliability with respect to the first two prongs of Kelly may
be decided as a matter of law by appellate courts in many instances). In view of the fact that the
State has met its burden in this case, we decline to take such a step at this time.

 Aguilar's third point of error is overruled. The judgment of the trial court is affirmed.



 PHIL HARDBERGER,

 CHIEF JUSTICE


PUBLISH

1. Aguilar's trial counsel objected to the following testimony by Officer Herrera:


 Q. Okay. And you were stating that you recalled it because of something the defendant said.

 A. Yes, ma'am.

 Q. And what was it that he said?

 A. As soon as we -- we arrived, Patrick -- Officer Rogers, he was driving, we pulled up
alongside -- the front of the house, actually. And since I was in the passenger's side, my
car was, I guess, properly parked, as we would say, and I was right next to the curb. He was
on the street side. He was driving the car that day. Before we even got out of the car, the
defendant immediately told us that he had been convicted for sexual assault and was on
parole for it.


A similar objection was made to the following testimony by the complainant's mother:


 Q. Okay. And then the police came; is that right.

 A. Yes.

 Q. Did you talk to them?

 A. Yes, I told them what had happened. And right away, he told the police officers -- See, I
was on the porch. Right away he told the police officers, "Let me explain. Let me explain."
He said, "I'm on probation," or something like that. He started telling them . . .



 DEFENSE COUNSEL: Your Honor, I object to this area on the same grounds under 404(b) and 403.


 THE COURT: Overruled.


 Q. Do you recall what it was that he told the police?

 A. He told them that. He said -- He said, "Wait a minute. Let me explain to you. I'm on
probation," you know. That's when he started talking -- I got away, you know.
2. Since Kelly addressed "novel" scientific evidence, a question has arisen with regard to whether the same
enhanced burden will apply in "non-novel" scientific evidence cases since the holding in Kelly with regard to the burden
of persuasion was based on the "difficulty laypersons have in evaluating the reliability of novel scientific testimony."
824 S.W.2d at 573. Another basis for the question is the absence of a general burden of persuasion in rule 104 of the
Texas Rules of Evidence, while rule 104 of the Federal Rules of Evidence applies a preponderance of the evidence
burden of persuasion. On the other hand, both Hartman and Nenno dispensed with any factual distinctions in applying
the Kelly test based on the type of evidence offered. Since we conclude that the State has met the clear and convincing
standard in this case, we do not address this issue at this time.
3. Kelly states that the three-part test must be satisfied "outside the presence of the jury." 824 S.W.2d at 573.
Although it appears the trial court erred in failing to have a hearing outside the jury's presence, such error was harmless
since the Kelly test was satisfied. Brown v. State, 881 S.W.2d 582, 588 (Tex. App.--Corpus Christi 1994, no pet.).


Return to
4th Court of Appeals Opinions