Tom ALLEN *v.* The Honorable Keith RUTLEDGE, Judge; Kenneth
Lavigne; Cynthia M. Lavigne

03–330                                                    139 S.W.3d 491

Supreme Court of Arkansas
Opinion delivered December 18, 2003

*Jeff Rosenzweig*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Jill Jones Moore*, Ass't Att'y Gen., for
appellee.

W.H. "Dub" Arnold, Chief Justice. This case involves the propriety of sanctions assessed by Circuit Judge Keith Rutledge, who was serving by appointment, against attorney Tom Allen under Rule 11 of Arkansas Rules of Civil Procedure. The trial judge ordered Allen to pay five hundred dollars ($500.00) to the opposing party. Allen is an attorney in Batesville and has presented various cases before Judge Rutledge, namely *Cynthia Lavigne v. Kenneth Lavigne* (Independence County Cir. PR-2002-251-4) and *Greenway v. Swaims* (Independence County Cir. CIV-2001-530-4) and was counsel in both cases. We take jurisdiction of this appeal, because it involves this court's power to regulate the practice of law. Ark. Sup. Ct. R. 1-2(a)(5). We reverse and remand.

*Facts*

On September 26, 2002, the trial court heard *Lavigne v. Lavigne* and announced its ruling from the bench. On October 11, 2002, Allen filed a motion to recuse and a brief in support thereof seeking Judge Rutledge's removal from the case based upon an "appearance of impropriety and an appearance of partiality." Allen cited the following reasons for recusal: (1) during the *Lavigne* trial, the trial judge had fondly referred to counsel for the plaintiff as Jo Hart Jr., the trial judge's former law partner and now a court of appeals judge; (2) the trial judge had made a comment in response to plaintiff's counsel as to alimony case law that "defendant's counsel would probably be happy with that amount;" (3) that alimony and child support constituting fifty-six percent of take home pay was unconscionable; (4) that the trial judge's refusal to decide custody according to the best interests of the children; (5) a statement by the trial judge earlier in the day that "I can do anything I want to. I'm the judge" and, (6) comments by the trial judge including "unfortunately sometimes you have to pay through the nose when you screw up." Allen argued by noting that the size of the alimony payments together with the judge's remarks about considering fault led him to conclude that Judge Rutledge neither gave his client a fair trial nor could he fairly rule on a motion for new trial, which Allen was considering filing in the *Lavigne* case.

On October 14, 2002, Allen filed a second motion to recuse and briefs in support thereof in the same case. The second motion noted the following: (1) that Allen believed that Judge Rutledge and Grady, opposing counsel, received the motion for recusal on

the afternoon of Friday, October 11; (2) that upon arriving at his office on Monday, October 14, Allen found he had been delivered a copy of a letter dated October 11 from Grady to the trial judge, enclosing a suggested precedent "pursuant to the request of the trial judge;" (3) that Allen was not aware of any written request to prepare a precedent and that he believed that the request was an ex parte oral communication; and, (4) that the transcript of the trial judge's ruling contained no request for preparation of a precedent.

Ms. Grady filed a response and brief in support to the motion to recuse. Grady conceded that Judge Rutledge had called her "Jo Hart Jr.," but, asserted that the rulings of the trial court were not the basis for recusal. Grady also stated that Judge Rutledge had indeed phoned her and asked her to prepare the precedent, as she was the prevailing party. Grady further suggested that Allen's allegations were sanctionable under Rule 11; however, Grady failed to present a formal motion.

On November 1, 2002, a hearing was set for the recusal motions in both *Lavigne* and *Greenway*. Neither party called witnesses in the recusal motion in *Lavigne*, both attorneys stating that they would stand on their written pleadings. Then the recusal motion was heard in the *Greenway* motion. Allen presented witnesses to the effect that Judge Rutledge had been discourteous to him and his client in that case. The following colloquy occurred:

> THE COURT: Okay. Now those are the two motions pending in this motion on the recusal. I'm going to state for the record that sometime prior to Ms. Grady furnishing me with the prep — proposed precedent in this matter, I had called her office as the winning attorney, which is normal in these cases, and I had ruled from the bench as to what my findings were in the case, and advised her secretary — I don't think I'd ever talked to Ms. Grady, that I needed a precedent in this, and to send the same to Mr. Allen so he could either object or not. Now, as far as I know that's the only communication that I've ever had and there's no evidence to the contrary in this record. Now, as it relates to the —
>
> MR. ALLEN: May I inquire of the Court?
>
> THE COURT: What?
>
> MR. ALLEN: I — I need to ask you a question.

THE COURT:  What are you going to ask me?

MR. ALLEN:  The letter dated October 11th that was delivered to my office was —

THE COURT:  Mr. Allen, do you have a question?

MR. ALLEN:  Yes, sir.

THE COURT:  What is it?

MR. ALLEN:  The letter that was dated October 11th that you have on my Motion to Recuse, a copy of which was hand-delivered and stuck in my door, says: "Dear Judge Rutledge: Pursuant to your request —" Was that made before the —

THE COURT:  I just told you, Mr. Allen. I just answered that question and it's —

MR. ALLEN:  No. My — my question to you —

THE COURT:  Well, I — I'm not going to sit up here and —

MR. ALLEN:  — is, was your request before or after you received the Motion to Recuse?

THE COURT:  I don't know. I don't know, Mr. Allen, but I'll tell you this. I'm not up here to answer your questions.

MR ALLEN:  Well, Judge, I think—

THE COURT:  I'm not up here to answer your questions. I just told you, I don't recall, but I do recall that I didn't talk to Jerrie Grady, okay.

MR. ALLEN:  Well —

THE COURT:  That's the end of that discussion. Now, let's go on back to your original motion. And —

MR. ALLEN:  Was it — was it —

THE COURT: — besides that, even if I had talked to her and said prepare this, it's not —

MR. ALLEN: Judge, was the suggested precedent hand-delivered to your office on Friday afternoon?

THE COURT: I have no idea. I wasn't there. And I wasn't there on the 14th or —

MR. ALLEN: Well, would you —

THE COURT: — the 15th either, Mr. Allen, like you've alleged, okay.

MR. ALLEN: Did you instruct Ms. Grady to give me a letter that I am to immediately notify the Court?

THE COURT: Mr. Allen, sit down. I'm not up here to answer your questions, okay. You had your opportunity to put on evidence. You didn't take it. Sit down. Okay.

MR. ALLEN: Well, Judge, okay.

THE COURT: All right, on — as it relates to the first Motion to Recuse in this case. I want to go back over that because I want to take it line by line since there's no evidence in this record that's been offered, okay. As it relates to my comments about Jo Hart, I — I don't know that that's important. I may or may not have said that. I don't think it shows anything other than an aggressive part — and I don't know that it was fondly. Fondly is a word I wouldn't necessarily use. But I do want to go to — and so I'll take care of that.

MR. ALLEN: What?

THE COURT: That —

MR. ALLEN: What on "d"?

THE COURT: — that — Mr. Allen, do you have something that you want to say. I'm going down through here —

MR. ALLEN: I'm trying to understand what you're saying.

THE COURT: You put on no evidence whatsoever, okay. Do you understand that? You have put on no evidence.

MR. ALLEN: Well, Judge, the record will bear it out though, right?

THE COURT: Now, let — well, Mr. Allen —

MR. ALLEN: Judge, you know whether or not you made that statement.

THE COURT: I don't know that I made that statement, but if I did, so what? That's my point. The second number(b), I don't know what that means. It — I don't know what it means. It doesn't show anything. It — it's — of a recusal nature. An unconscionable amount of alimony is something that you can appeal, if you feel like it's unconscionable. That's an appellate decision, not a —

MR. ALLEN: I understand that.

THE COURT: — Motion for Recusal. The — whether or not the Court properly followed the law as it relates to change of custody, that's an appealable issue, not something that the — this Court's going to recuse on. The statement that you — and this is a cheap shot, Jr. Allen, and I will state it for the record, it's a cheap shot. You put in here that the Trial Judge's statement earlier in the day in the courtroom, prior to hearing his case, that, "I can do anything I want to. I'm the Judge," was an aside bar comment, had nothing to do with any case. It had to do with a case that you and Mr. Garner were here on and Mr. Garner — at your request I got those children back for you that day —

MR. ALLEN: That's — that's not what happened.

After some more discussion, Judge Rutledge then ruled in the following way:

THE COURT: Now, on these two motions, I'm going to deny both motions, but I want to read you what Rule 11 says because I think that's significant in this case, 'cause I think especially on the Lavigne case — I think it's just atrocious that you would file these allegations where there's no factual bases for any of them. "The" — Rule 11 says in part: "The signature of an attorney or party constitutes a certificate by him that he has read the pleadings, motion or other paper. That to the best of his knowledge, infor-

mation and belief formed after reasonable inquiry, it is well grounded in fact and I warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader. If a pleading, motion or other paper is signed in violation of this Rule, the Court upon motion or upon it's own initiative shall impose upon the person who signed it, a represented party or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee." Subparagraph (b): "A motion for sanctions under this rule shall be made separately from other motions." And — and I can do that on my own. "And it shall be served on the proper person." And I'm doing that on you today, Mr. Allen.

MR. ALLEN: Serving what?

THE COURT: "But shall not be filed with or presented to the Court unless, within twenty-one days after service of the motion or such other period as the Court may prescribe, the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or appropriately corrected." Now, you heard me go through your motion especially in the Swaims case and you heard—you know that those allegations are false on their face, that I communicated with Ms. Grady in that case on the 12th of September [*sic*], or anytime thereabouts, or on the 14th or 15th of October. You know that to be false.

MR. ALLEN: No, I do not know that.

THE COURT: You have stated that and you have offered no evidence of that.

MR. ALLEN: I do not know — under the — under the Code, Judge —

THE COURT: Well —

MR. ALLEN: — well, wait a minute. Let me say something.

THE COURT: No.

MR. ALLEN: Under — under — under the Code as it pertains to ex-parte communications, a Judge must disclose to all parties all ex-parte communications.

THE COURT: I know the law. Okay, since you brought that up —

MR. ALLEN: And that's what — that's what I was going to ask you to do today.

THE COURT: Well, I did.

MR. ALLEN: But the only way I can do it —

THE COURT: I did that, Mr. Allen. I just did it.

MR. ALLEN: I — I —

THE COURT: I told you there were none. Now, but since you brought that up, this is why I asked you about the Wood — the Woodall case —

MR. ALLEN: Right, I know that it's on there.

THE COURT: You know — you know yourself, you've had ex-parte communication to the Court. It's right there in black and white. You did not furnish that to Ms. Grady. You told the Court you weren't furnishing it to Ms. Grady.

MR. ALLEN: That's right.

THE COURT: And that is a violation of — if there ever was one, okay. You're the one that initiated that ex-parte communication, not me, not Ms. Grady, not anybody else and you know that. So I don't want to hear — if you've got some evidence that I have communicated with Ms. Grady on any of this stuff, other than to direct her office to furnish me a precedent in a case that she won, I — I want to — you have had your opportunity and you have presented no evidence.

MR. ALLEN:  Well, that — that ex-parte communications made by the Court are strictly within your knowledge and I understand the code of Judicial Conduct to provide that — that those have to be disclosed by this Court.

THE COURT:  And I've done that.

MR. ALLEN:  Well, I didn't know what it was until I got here, Judge.

THE COURT:  You made an allegation —

MR. ALLEN:  I did.

THE COURT:  You stated on your face that I did that.

MR. ALLEN:  I did.

THE COURT:  That is false allegations.

MR. ALLEN:  Well, Judge —

THE COURT:  I'm giving you the opportunity, Mr. Allen, to withdraw that pleading. If you don't want to do that, because you put on absolutely no evidence to that, that's fine with me. I will address that at the proper time. But right now, you have no evidence. I have stated — just because you make a — a brass [sic] allegation that the Court's talking to all these lawyers doesn't mean I have to come in here and — and outline to you everything I do. I don't know where you're coming from, but I can assure you this, that on October the 14th and 15th I was with my wife and daughter in Virginia and Washington, D.C., and I wasn't communicating with Ms. Grady.

MR. ALLEN:  Well, on —

THE COURT:  On September the 12th [sic], I wasn't communicating and you've alleged that, and I'm asking you if you want to withdraw it, fine. If you don't, we'll take up the sanctions, all right. Now, anything else.

MR. ALLEN:  No.

THE COURT: Okay. Ms. Grady, fix me an order on both of those, and on the — on these, not the Lavigne case, but that other case, the Greenway v. Swaims case, I'm going to hold that. You fix me up one on Lavigne, all right.

MS. GRADY: This is an order denying his Motion for Recusal.

THE COURT: Uh hum. Mr. Allen, we're not through yet.

MR. ALLEN: Pardon?

THE COURT: Are you leaving?

MR. ALLEN: No, I thought we were through.

THE COURT: Okay. All right. I'm going to give you ten days to decide what you want to do on those motions. Okay. I'm going to shorten that twenty-one to ten days and you can decide what you want to do.

MR. ALLEN: You mean about withdrawing my Motion to Recuse. Is that what you're referring to?

THE COURT: Uh hum. And your allegations in those motions, that's right.

MR. ALLEN: Well, I'll — I'll visit with some counsel —

THE COURT: Yeah, okay. All right.

MR. ALLEN: — and advise the Court accordingly.

THE COURT: Okay.

MR. ALLEN: When is that decree doing to be filed of record?

THE COURT: When I sign it. Okay.

Allen failed to file a document withdrawing any allegation. Judge Rutledge then issued an order imposing sanctions .

Allen now brings five points on appeal: (1) whether the imposition of sanctions should be reversed because the notice to Allen was not in writing; (2) whether, even if oral service of a Rule

11 warning is sufficient in some instances, the complaint was not specific enough to properly apprise Allen of the alleged misconduct, and the incongruity between the notice and the order imposing Rule 11 sanctions requires reversal; (3) whether the trial court should recuse from deciding sanctions; (4) whether Allen's conduct meets the criteria for imposition of Rule 11 sanctions; and, (5) whether the sanctions order specifies why the amount of the sanction is $500.

Rule 11(b) of the Arkansas Rules of Civil Procedure states:

> (b) A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (a). It shall be served as provided in Rule 5 but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

### Standard of Review

The imposition of sanctions is a serious matter to be handled with prudence, and the trial court's decision is due substantial deference. *Williams v. Martin,* 335 Ark. 163, 980 S.W.2d 826 (1995); *Jenkins v. Goldsby,* 307 Ark. 558, 822 S.W.2d 842 (1992). This court reviews a trial court's determination of whether a violation of this rule occurred under an abuse-of-discretion standard. *Ward v. Dapper Dan Cleaners &* Laundry, *Inc.,* 309 Ark. 192, 828 S.W.2d 833 (1992). In deciding an appropriate sanction, trial courts have broad discretion not only in determining whether sanctionable conduct has occurred, but also what an appropriate sanction should be. *Crockett & Brown v. Wilson,* 321 Ark. 150, 901 S.W.2d 826 (1995).

Allen argues that this abuse-of-discretion standard should be modified, "since if the trial court finds that Rule 11 criteria have been met, the court has no discretion in assessment of sanctions." *Crockett & Brown, supra.* Allen avers that this court should analyze questions of law *de novo* and that underlying factual determinations

should be subject to the clearly erroneous standard under Rule 52 of the Arkansas Rules of Civil Procedure.

■ However, the United States Supreme Court has analyzed review standards for Rule 11 cases, and it supports the use of the abuse-of-discretion standard finding is best suited to address Rule 11 situations given the close interplay between factual and legal issues. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, (1990). The United States Supreme Court wrote:

> The Circuits also agree that, in the absence of any language to the contrary in Rule 11, courts should adhere to their usual practice of reviewing the district court's findings of fact under a deferential standard. See Fed. Rule Civ. Proc. 52(a) ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses"). In practice, the "clearly erroneous" standard requires the appellate court to uphold any district court determination that falls within a broad range of permissible conclusions. *See, e. g., Anderson v. Bessemer City*, 470 U.S. 564, 573-574 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous"); *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 857-858 (1982). When an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable: A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous.

*Cooter & Gell*, 496 U.S. at 400-401.

### Recusal from Determining Sanctions

Allen argues for his third point on appeal that the trial judge should have recused from deciding sanctions. We agree. For the purposes of this particular case, we hold that Judge Rutledge should have recused from deciding sanctions. Therefore, this court need not reach the merits of the other points on appeal.

■ In *Clark v. State*, 287 Ark. 221, 697 S.W.2d 895 (1985) this court held:

> These remarks indicate that the judge became "embroiled in a personal dispute", *Meyer, supra*, with the appellant. Even though the judge's objectivity may not have been affected by the appellant's attack, "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11 (1954). Accordingly, the trial judge under these circumstances should have recused from hearing the contempt charge. As stated by Chief Justice Taft in *Cooke v. United States*, 267 U.S. 517, 539 (1925):
>
>> [A]ll of such cases ... present difficult questions for the judge. All we can say on the whole matter is that where conditions do not make it impracticable, or where the delay may not injure public or private rights, a judge called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place.
>
> By our holding we do not intend that all contempts not committed in the immediate view and presence of the court, must be tried by a third party. But where a direct personal attack is made on a judge which is the subject of a contempt charge by that judge, or contemptuous conduct occurs which necessitates a factual hearing on the allegations made against the judge (as seems to have been contemplated in this case), to ensure a fair and impartial hearing the judge must recuse.

*Clark*, 287 Ark. at 227. Here, Judge Rutledge was required to recuse from the Rule 11 sanction issue because of his obvious bias toward Allen. Due process requires not only that a judge be fair, but that he also appear to be fair. *Turney v. Ohio*, 273 U.S. 510 (1927). The colloquies in this case demonstrate the wisdom of the *Clark* rule, because Judge Rutledge misread, at least the second motion to recuse, and repeatedly shut Allen off when Allen sought answers to his questions.

In *Bennett v. NAACP*, 236 Ark. 750, 755, 370 S.W.2d 79, 82 (1963), this court stated, "Our form of government guarantees to all of us the right of free and uninhibited access to the judiciary, and this certainly implies that we must not be so fearful of every day and common acts that this access to the judiciary is actually fettered because of fear." Further, Article 2, § 4, of the Arkansas Constitution states:

The right of the people peaceable to assemble to consult for the common good, and to petition, by address or remonstrance, the government, or any department thereof, shall never be abridged.

■     Rule 11 is employed to sanction attorneys who have unjustifiably failed to carry out a responsibility as an officer of the court. A criminal contempt citation may be used to penalize attorneys and nonattorneys alike for an insult to the authority of the court. In this case, Judge Rutledge should have recused from deciding the sanction issue. His comments and rulings indicate that he was biased. During the hearing on the recusal motions, Judge Rutledge stated, "I'm not up here to answer your questions," and prior to the hearing referred to Ms. Grady as "Jo Hart Jr.," a former law partner of Judge Rutledge, and, "I can do anything I want to. I'm the Judge." These remarks, along with the overall biased tone of Judge Rutledge's comments, indicate that he should have recused himself from hearing and deciding the Rule 11 sanctions issue.

Reversed and remanded.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. This case troubles me because the underlying divorce decree between the divorcing parties, Cynthia M. Lavigne and Kenneth Lavigne, has not been appealed. This is true even though the allegations contained in Kenneth's motion to recuse allege the misconduct of Circuit Court Judge Keith Rutledge. The motion further alleges that Judge Rutledge showed his appearance of impropriety or bias when rendering the Lavignes' divorce. The allegations Kenneth's attorney alleged as the basis of his recusal motion are as follows:

a. That during the trial of this cause the Court fondly referred to counsel for the plaintiff as Jo Hart, Jr., the Judge's former law partner, and now a Court of Appeals judge.

b. That near the conclusion of the trial of this cause plaintiff's counsel commented to the Court that she had found a case *wherein the amount of alimony to be determined by the trial court* by accounting the parties *seeking alimony as two (2) dependents under the Arkansas Family Support Chart* to which the Judge commented that defendant's counsel would probably be happy with that amount.

c.  The *unconscionable amount of alimony* awarded when coupled with the amount of child support awarded constitutes 56% of defendant's take-home pay.

d.  The refusal of the Court to decide the custody issue on the best interest of the children having announced in the pre-trial conference immediately prior to the hearing that the Court would not place the children with the defendant while he was residing with another woman, thereby foregoing a decision based on the "best interest" of the children.

e.  The trial judge's statement earlier in the day in the Courtroom prior to hearing this case that "I can do anything I want to, I'm the judge."

f.  The trial judge at the conclusion of the trial stated as follows:

> Okay, here's what we're going to do. In addition I think she's entitled to alimony and I think he's going to have to pay and — and unfortunately sometime you have to pay through the nose when you screw up, okay. I mean that's just the way life is. When you — if you want more than you've got sometimes you have to pay. (Emphasis added.)

While counsel for Kenneth contends that it appears Judge Rutledge's bias has affected his decision rendered in the parties' divorce, Kenneth has not appealed the divorce decree. Rather, this court is given snips and pieces of the colloquy between Kenneth's attorney, Tom Allen, and the judge. Obviously, without the record before us, it is impossible to determine whether the charges made by Kenneth are valid, warranted by law, or a good-faith argument.

It is Kenneth's and his counsel's burden to show error on appeal, and, in my view, they have failed to provide a full record upon which this court can decide the validity of their allegations. Therefore, the appeal should be dismissed. I do wish to point out that I believe Mr. Allen and Judge Rutledge entered into a discourse that did not exemplify the appropriate conduct or demeanor established in either the Rules of Professional Conduct or the Arkansas Code of Judicial Conduct. Perhaps the issues raised by counsel and the judge should be dealt with in those two venues.