COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-04-465-CR

 

 

FLORI DERVISHI A/K/A FLORI DARVISHI                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction








In three points, Flori
Dervishi asserts error in connection with his conviction for aggravated assault
with a deadly weapon.  Specifically, he
asserts that there is insufficient evidence to support the deadly weapon
finding and the guilty verdict as a whole, and that the trial court erred in
failing to suppress an in-court identification of Dervishi by one of the State=s witnesses, the victim of the assault, Anna Habib.  We affirm.

II. Background

This is the case of the
car-chase collision.  As set forth by
Dervishi and the State, the following events led up to the collision, which
occurred on May 8, 2003.  Anna Habib and
New Jersey resident Flori Dervishi met during the fall of 2001 and began a romantic
relationship.  At the time that they met
at a gentlemen=s club in
New Jersey, Habib was working as a dancer at the club and living in New
York.  Dervishi was, and is, still
married and has two children by his wife. 
The affair continued off and on from 2001 until 2003, after the parties
moved to Texas. 








Dervishi did not initially
tell Habib that he was married, but he told her after a couple of months.  Dervishi testified that after a while he tried
to break off the relationship numerous times, but eventually his wife found out
and he started having problems at home in New Jersey.  He and Habib went on a trip to Florida, and
on that trip they discussed moving to Texas so that they could start a life
together with a clean slate.  Dervishi
testified that Habib agreed to move to Texas with him.  Dervishi found an apartment and located a
pizza business to open in Arlington. 
Dervishi introduced Habib to some people at the Cabaret Royal, a
gentlemen=s club in
Dallas, so that she could have a job in Texas. 
Dervishi testified that around the end of February 2003 he gave Habib
$1,200 so that she could get her own apartment because he was planning to move
his family to Texas.  Around the end of
April 2003, he tried to break off the relationship with Habib because she
started threatening to let his wife know that she was in Texas.  She also threatened that she was going to
make it rough on him by coming to his restaurant while his wife was there and
making a scene in front of the customers. 
According to Dervishi, the relationship ended in late April 2003.

Habib testified that a few
days before the incident on May 8, 2003, she left her apartment in a hurry to
stay with some other people and did not take any of her personal items.  She testified that she came back to her
apartment on May 8, 2003, to get her clothes and personal belongings.  She borrowed a black Lincoln Town Car from
someone to go there because she was afraid that Dervishi might be looking for
her.








Dervishi testified that,
because he was afraid that he would lose his family again, he agreed to meet
with Habib on May 8, 2003, to work things out so that she would not tell his
wife that she was in Texas.  Dervishi
stated that Habib told him to meet her at her apartment.  When he approached the apartment complex, he
saw Habib leaving the complex in a black car. 
Dervishi testified that he stopped and said, AYou called me over here, and you are driving away.  What=s going on?@  He also testified that she said, AI don=t have time
right now.  I will meet you later,@ and then she took off.

Dervishi testified that he
turned around to follow her because she had made him leave his job to come see
her and now she was leaving.  They were heading
north on highway 360, he was behind her, and they were going very fast.
Dervishi stated that when they attempted to enter highway 183, she slowed down
to enter the traffic and he accidently hit her car in the rear.  He then pulled his car over, went to her car,
and asked her if she was alright.  He
said that she was hysterical and that he grabbed her and held her down.  He testified that he never hit her, he only
tried to control her.  Dervishi said that
he then panicked, jumped in his car, and left the scene because he didn=t want his wife to find him there with Habib.








Habib testified that Dervishi
chased her from the apartment complex and that he intentionally hit her in the
rear of her car.  Habib further
testified, AI believe he
thought that I would not stop, so he hit the car that I was driving.@  On cross-examination, Habib
stated, AI am not in [Dervishi=s] mind, but the impression I had was that that wasn=t just an accident.  That was
intentional.@  She testified, AI=m saying he
hit me on purpose.@  According to Habib, her car spun around in
the street and stopped.  Dervishi stopped
his car, came over to her car, opened the door, and started hitting her in the
face.  She testified that he said, @I=m going to
kill you, [Habib].  This time I=m going to kill you.@  She also stated that he
punched her about five or six times; he pushed her face down and hit her face
with his knee.  Habib testified that she
was terrified and tried to protect herself by covering her face with her
hands.  She also tried to get away from
Dervishi by crawling to the passenger side of her car, but Dervishi went in
after her.  When people started stopping their
vehicles, he took off. 








The State called Jennifer
Kristoff, a witness of the accident and assault.  Kristoff testified that she was going east on
highway 183 when an off-white Volvo crossed over in front of her and hit a
black Lincoln Town Car and that it did not appear to be an accident but looked
to be intentional.  Kristoff went on to
explain that the Volvo crossed in front of her vehicle in order to strike the
victim=s car, which was traveling in the lane to the left of Kristoff.  She testified, AI=ve been in
accidents.  Accidents don=t appear to be on purpose.  Cars
don=t cross over to hit other cars.@  Kristoff testified that she
was Apositive@ that A[Dervishi] did not lose control of [his] vehicle.  It was an intentional clip.@  She stated that the Lincoln
Town Car spun around and stopped about twenty feet in front of her.  She said that the Volvo pulled over, and a
man got out and ran over to the Lincoln Town Car.  The man went to the car, opened the door, and
began to beat the woman inside the car. 
The assaulter began to strike the victim with his fists, and Ahe pulled [Habib=s] head down
and hit her head.@  The man continued to hit the woman for three
to five minutes until another man stopped and got out of his truck and the
assaulter ran off.  Kristoff identified
Dervishi in court in front of the jury and stated that she was never contacted
by the police until a week before the trial.

The State also called Howard
Wagner, another witness to the assault. Wagner stated that he drove up on the
accident after it happened and that he saw a lady stopped behind the Lincoln
Town Car.  She was on a cell phone, so he
started to drive away.  He testified that
as he approached the vehicles, in his rear view mirror he saw a man walking
over to the Lincoln Town Car.  The man
began talking to the woman in the Lincoln Town Car, and then he began to hit
her repeatedly with his fist.  Wagner
testified that by this time he had passed the vehicles, so he put his truck in
reverse, backed up to the scene, and opened his door.  When he did this, the man ran to his Volvo
and took off.  Wagner could not identify
the man as Dervishi in court, nor could he identify anyone at a photo lineup
after the event.

III. Standard of Review for
Points One and Two








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment, weighing all of the evidence, the contrary evidence is so strong that
guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 
 In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that
of the fact finder=s.  Zuniga, 144 S.W.3d at 482.  








A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

IV.  Application

In his first point, Dervishi
asserts that the evidence is factually insufficient to support the deadly
weapon finding, that is, that Dervishi used his auto as a deadly weapon.  A Adeadly weapon@ is defined
as Aa firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury; or . . . anything that in
the manner of its use or intended use is capable of causing death or serious
bodily injury.@  Tex.
Penal Code Ann. ' 1.07(a)(17) (Vernon Supp. 2005). 
Reviewing the testimony of Habib and eyewitness Kristoff, and applying
the appropriate standard of review, we hold that the evidence is factually
sufficient to support the deadly weapon finding and overrule Dervishi=s first point.

In his second point, Dervishi
asserts that the evidence is factually insufficient to support the
verdict.  Again, reviewing the testimony
of Habib and eyewitness Kristoff, and applying the appropriate standard of
review, we hold that the evidence is factually sufficient to support the
verdict and overrule Dervishi=s second point.








In his third point, Dervishi
asserts error on the part of the trial court in failing to suppress the
in-court identification of Dervishi by eyewitness Kristoff.  Dervishi fails to leave the starting blocks
on this argument.  He took the witness
stand at guilt/innocence and testified under oath that he followed Habib in his
car, struck the rear of her car, pulled over to the shoulder, went over to her,
Agrabbed her hands and put them down and pushed her body, her head,
toward the floor.@  Dervishi identified himself, so he cannot now
be heard to complain that another witness also identified him.  See Aguilar v. State, 980 S.W.2d 824, 826
(Tex. App.CSan Antonio
1998, no pet.)  Dervishi=s third point is overruled.

V. Conclusion

Having overruled Dervishi=s three points, we affirm the judgment of the trial court.   

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
December 15, 2005











[1]See Tex. R. App. P. 47.4.