DERVISHI V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-465-CR

FLORI DERVISHI A/K/A FLORI DARVISHI APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

In three points, Flori Dervishi asserts error in connection with his conviction for aggravated assault with a deadly weapon.  Specifically, he asserts that there is insufficient evidence to support the deadly weapon finding and the guilty verdict as a whole, and that the trial court erred in failing to suppress an in-court identification of Dervishi by one of the State’s witnesses, the victim of the assault, Anna Habib.  We affirm.

II. Background

This is the case of the car-chase collision.  As set forth by Dervishi and the State, the following events led up to the collision, which occurred on May 8, 2003.  Anna Habib and New Jersey resident Flori Dervishi met during the fall of 2001 and began a romantic relationship.  At the time that they met at a gentlemen’s club in New Jersey, Habib was working as a dancer at the club and living in New York.  Dervishi was, and is, still married and has two children by his wife.  The affair continued off and on from 2001 until 2003, after the parties moved to Texas. 

Dervishi did not initially tell Habib that he was married, but he told her after a couple of months.  Dervishi testified that after a while he tried to break off the relationship numerous times, but eventually his wife found out and he started having problems at home in New Jersey.  He and Habib went on a trip to Florida, and on that trip they discussed moving to Texas so that they could start a life together with a clean slate.  Dervishi testified that Habib agreed to move to Texas with him.  Dervishi found an apartment and located a pizza business to open in Arlington.  Dervishi introduced Habib to some people at the Cabaret Royal, a gentlemen’s club in Dallas, so that she could have a job in Texas.  Dervishi testified that around the end of February 2003 he gave Habib $1,200 so that she could get her own apartment because he was planning to move his family to Texas.  Around the end of April 2003, he tried to break off the relationship with Habib because she started threatening to let his wife know that she was in Texas.  She also threatened that she was going to make it rough on him by coming to his restaurant while his wife was there and making a scene in front of the customers.  According to Dervishi, the relationship ended in late April 2003.

Habib testified that a few days before the incident on May 8, 2003, she left her apartment in a hurry to stay with some other people and did not take any of her personal items.  She testified that she came back to her apartment on May 8, 2003, to get her clothes and personal belongings.  She borrowed a black Lincoln Town Car from someone to go there because she was afraid that Dervishi might be looking for her.

Dervishi testified that, because he was afraid that he would lose his family again, he agreed to meet with Habib on May 8, 2003, to work things out so that she would not tell his wife that she was in Texas.  Dervishi stated that Habib told him to meet her at her apartment.  When he approached the apartment complex, he saw Habib leaving the complex in a black car.  Dervishi testified that he stopped and said, “You called me over here, and you are driving away.  What’s going on?”  He also testified that she said, “I don’t have time right now.  I will meet you later,” and then she took off.

Dervishi testified that he turned around to follow her because she had made him leave his job to come see her and now she was leaving.  They were heading north on highway 360, he was behind her, and they were going very fast. Dervishi stated that when they attempted to enter highway 183, she slowed down to enter the traffic and he accidently hit her car in the rear.  He then pulled his car over, went to her car, and asked her if she was alright.  He said that she was hysterical and that he grabbed her and held her down.  He testified that he never hit her, he only tried to control her.  Dervishi said that he then panicked, jumped in his car, and left the scene because he didn’t want his wife to find him there with Habib.

Habib testified that Dervishi chased her from the apartment complex and that he intentionally hit her in the rear of her car.  Habib further testified, “I believe he thought that I would not stop, so he hit the car that I was driving.”  On cross-examination, Habib stated, “I am not in [Dervishi’s] mind, but the impression I had was that that wasn’t just an accident.  That was intentional.”  She testified, “I’m saying he hit me on purpose.”  According to Habib, her car spun around in the street and stopped.  Dervishi stopped his car, came over to her car, opened the door, and started hitting her in the face.  She testified that he said, ”I’m going to kill you, [Habib].  This time I’m going to kill you.”  She also stated that he punched her about five or six times; he pushed her face down and hit her face with his knee.  Habib testified that she was terrified and tried to protect herself by covering her face with her hands.  She also tried to get away from Dervishi by crawling to the passenger side of her car, but Dervishi went in after her.  When people started stopping their vehicles, he took off. 

The State called Jennifer Kristoff, a witness of the accident and assault.  Kristoff testified that she was going east on highway 183 when an off-white Volvo crossed over in front of her and hit a black Lincoln Town Car and that it did not appear to be an accident but looked to be intentional.  Kristoff went on to explain that the Volvo crossed in front of her vehicle in order to strike the victim’s car, which was traveling in the lane to the left of Kristoff.  She testified, “I’ve been in accidents.  Accidents don’t appear to be on purpose.  Cars don’t cross over to hit other cars.”  Kristoff testified that she was “positive” that “[Dervishi] did not lose control of [his] vehicle.  It was an intentional clip.”  She stated that the Lincoln Town Car spun around and stopped about twenty feet in front of her.  She said that the Volvo pulled over, and a man got out and ran over to the Lincoln Town Car.  The man went to the car, opened the door, and began to beat the woman inside the car.  The assaulter began to strike the victim with his fists, and “he pulled [Habib’s] head down and hit her head.”  The man continued to hit the woman for three to five minutes until another man stopped and got out of his truck and the assaulter ran off.  Kristoff identified Dervishi in court in front of the jury and stated that she was never contacted by the police until a week before the trial.

The State also called Howard Wagner, another witness to the assault. Wagner stated that he drove up on the accident after it happened and that he saw a lady stopped behind the Lincoln Town Car.  She was on a cell phone, so he started to drive away.  He testified that as he approached the vehicles, in his rear view mirror he saw a man walking over to the Lincoln Town Car.  The man began talking to the woman in the Lincoln Town Car, and then he began to hit her repeatedly with his fist.  Wagner testified that by this time he had passed the vehicles, so he put his truck in reverse, backed up to the scene, and opened his door.  When he did this, the man ran to his Volvo and took off.  Wagner could not identify the man as Dervishi in court, nor could he identify anyone at a photo lineup after the event.

III. Standard of Review for Points One and Two

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

IV.  Application

In his first point, Dervishi asserts that the evidence is factually insufficient to support the deadly weapon finding, that is, that Dervishi used his auto as a deadly weapon.  A “deadly weapon” is defined as “a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or . . . anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.
”  Tex. Penal Code Ann.
 § 1.07(a)(17) (Vernon Supp. 2005).  Reviewing the testimony of Habib and eyewitness Kristoff, and applying the appropriate standard of review, we hold that the evidence is factually sufficient to support the deadly weapon finding and overrule Dervishi’s first point.

In his second point, Dervishi asserts that the evidence is factually insufficient to support the verdict.  Again, reviewing the testimony of Habib and eyewitness Kristoff, and applying the appropriate standard of review, we hold that the evidence is factually sufficient to support the verdict and overrule Dervishi’s second point.

In his third point, Dervishi asserts error on the part of the trial court in failing to suppress the in-court identification of Dervishi by eyewitness Kristoff.  Dervishi fails to leave the starting blocks on this argument.  He took the witness stand at guilt/innocence and testified under oath that he followed Habib in his car, struck the rear of her car, pulled over to the shoulder, went over to her, “grabbed her hands and put them down and pushed her body, her head, toward the floor.”  Dervishi identified himself, so he cannot now be heard to complain that another witness also identified him.
  See Aguilar v. State
, 980 S.W.2d 824, 826 (Tex. App.—San Antonio 1998, no pet.)  Dervishi’s third point is overruled.

V. Conclusion

Having overruled Dervishi’s three points, we affirm the judgment of the trial court. 

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: December 15, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P. 47.4
.